Watson vs. Watson.

---

**No. 6.—Julia Ann Watson, by her next friend, plaintiff in error, vs. William Watson, defendant in error.**

An instrument was substantially as follows: "Know all men by these presents, that I, James B. Carter, for and in consideration of the natural love and affection which I bear unto my children, (naming them,) and for their better preferment in life, and the increase of their portion, and also in consideration of the sum of ten dollars, to me in hand paid by my children at and before the sealing and delivery hereof, the receipt whereof I do hereby acknowledge, have given, granted, bargained and sold, and by these presents, do give, grant, bargain and sell, unto my children, all the property hereafter named, to be equally divided between them at my death, to-wit: (divers negroes,) to have and to hold all of the property hereby given and granted unto them, their heirs, executors, and administrators, forever, as their own property; also, I do hereby appoint my son-in-law guardian for myself and children, during my natural life: Nevertheless, if any of my children should marry or come of age during my life-time, then they are to draw their equal shares of my estate as heretofore mentioned.

In witness whereof, I have hereunto set my hand and seal, this, 12th day of September, 1837.

JAMES B. CARTER, [L. S.]

In presence of

Attest, James S. Fuller,
John R. Stanford."

Held, That this instrument was not a will.

In Equity in Richmond Superior Court. Tried before Judge Holt, at April Term, 1857.

Upon the trial of this case, complainant offered in evidence the following instrument in support of her title to the property in controversy, to-wit:

GEORGIA,    ⎱ Know all men by these present, That Warren County. ⎰ I, James B. Carter, of the aforesaid State and county, for, and in consideration of the natural love and affection which I bear unto my children—Lazarus Sallis, my son-in-law, Martha Jane Carter, Anderson C. Carter, Marcus Carter, David Carter, Effe Ann Carter, and Julia Ann Carter, and for their better preferment in life and the increase of their portion, and also in consideration of the sum of ten dollars to me in hand paid by my children above named, at and before the sealing and delivery hereof, the receipt whereof I do hereby acknowledge, have given, granted, bargained, sold, and by these presents do give, grant, bargain and sell, unto my children above named, all the property hereafter named, to be equally divided between them at my death by three disinterested ("persons") which is as follows, to wit:—one negro man named Doss, one named George, Joe, Patrick, Moses, Jeremiah, one negro woman Vilet, one Huldah, one by the name of Peter, one named Juda, one girl named Eaba, one man by the name of Jared: To have and to hold, all and singular the property hereby given and granted unto the above named children, their heirs, executors, and administrators forever, as their own proper property; also I do hereby appoint Lazarus Sallis, my son-in-law, Guardian for myself and children, during my natural life: Nevertheless, if any of my children should marry or come of age during my life time, then they are to draw their equal shares of my estate as heretofore mentioned.

In witness whereof, I have hereto set my hand and seal, this the twelfth of September, one thousand eight hundred and thirty-seven.

                    JAMES B. CARTER, [L. S.]
In presence of
*Attest*, JAMES S. FULLER,
        JOHN R. STANFORD.

GEORGIA,    } Before me, personally came John R. Stan-
Warren County. } ford, and after being duly sworn, saith that
he saw James B. Carter sign, seal, and deliver the within in-
strument of writing, for the purposes therein mentioned, and
that James S. Fuller was a subscribing witness with himself.

JOHN R. STANFORD.

Sworn to and subscribed before me this Sept. 15, 1837.

Q. L. C. FRANKLIN, *J. I. C.*

Recorded 15th Sept., 1837.

JOHN MOORE, *Clerk.*

To which being admitted in evidence, counsel for defen-
dant objected on the ground that the paper was not a deed,
but a testamentary paper, and had not been probated and ad-
mitted to record in the Court of Ordinary.    After argument
had, the Court sustained the objection, and excluded the in-
strument.    To which decision counsel for complainant ex-
cepted, and now assigns said ruling as error.

MILLERS & JACKSON ; and E. H. POTTLE, for plaintiff in
error.

GOULD, for defendant in error.

*By the Court.*—BENNING, J. delivering the opinion.

Was the instrument made by James B. Carter, a will, or a
deed ?    The Court below held that it was a will.

An instrument is a will, if it is not to take effect until after
the death of its maker; a deed if it is to take effect before his
death.

Whether an instrument is to take effect before the death of
its maker, or not until afterwards, depends on his intention.
If his intention is, that the instrument shall take effect before
his death, the instrument will take effect before his death ;
if his intention is, that the instrument shall not take effect
until after his death, the instrument will not take effect until

after his death. This will be so, provided, that there is not something in the law, to say, that the instrument shall not take effect according to the intention of its maker.

In respect to the present instrument—whether the intention of its maker was, that it should take effect before his death, or not until afterwards—there is nothing in the law to say, that the instrument should not take effect according to that intention.

The *words* of an instrument are what we are mainly to regard, when we set about seeking what its author's intention was in making the instrument; and those words are to be taken in their usual acceptation, unless there is some extraordinary reason forbidding them to be so taken.

There does not appear to be any extraordinary reason why the words of this instrument should not be taken in their usual acceptation.

The *form* of an instrument also, may help to indicate the intention of its author.

The words and the form may both point the same way: whenever they do, there can hardly be a doubt, that that is the way to go to find the intention.

Now, the words of this instrument, taken, as they must be, in their usual acceptation, show an intention in the maker of the instrument to do an act that was to have effect before his death.

" I, James B. Carter," " have given, granted, bargained, sold, and by these presents, do give, grant, bargain and sell," words found in this instrument, are words which, if taken in their usual acceptation, express a gift *to arise immediately* on their utterance. They are words which do this with emphasis, when preceded as these are, by such words as the following—" and also in consideration of the sum of ten dollars to me in hand paid," " at and before the sealing and delivery hereof, the receipt whereof I do hereby acknowledge," and when followed by such words as these, " to have

and to hold all and singular the property hereby given and granted unto" &c. "forever as their own property."

"Nevertheless, if any of my children should marry or come of age during my life-time, then they are to draw their equal shares of my estate as heretofore mentioned." These are the last words of the instrument. And unless the intention of the maker of the instrument was such, that the instrument should, or might, take effect during his life-time, these words are absurd, not to say contradictory of the other words contained in the *instrument*. But if his intention was such, that the instrument should or might take effect during his life-time, the words are sensible, and they are consistent with all the other words of the instrument; and they are reasonable too, as they add a natural provision to the instrument.

The same thing, for the most part, is to be said of the provision expressed in these words: "Also I do hereby appoint Lazarus Sallis, my son-in-law, guardian for myself and children, during my natural life." True, this provision may be void of itself; but then even a void provision in an instrument, may serve as some index of intention.

Consulting, then, the *words* of this instrument, the conclusion to which we must come, is, that it was the intention of the maker of it, James B. Carter, that it should take effect before his death.

What says the form of the instrument?

The form of the instrument is that of a deed, and not that of a will: "Know all men by these presents;" "in consideration of the sum of ten dollars" "paid," "before the sealing and delivery hereof;" "to have and to hold;" "in witness whereof, I have hereunto set my hand and seal;" these are all features appropriate to a deed, and not features appropriate to a will.

The form of the instrument being that of a deed, and a deed being an instrument to take effect before the death of its maker, the *form* helps *the words*, in the matter of showing

that it was the intention of the maker of the instrument, that it should take effect before his death.

The words, and the form, then, concur in saying, that this was his intention : a part of the words would be absurd ‾and void, if this were not his intention.

This being so, the conclusion must be, that this was his intention. But if this was his intention, then the instrument was not a will, it was a deed.

We think, therefore, that the instrument was not a will, but was a deed.

In this opinion, we are more or less supported by, *Cumming vs. Cumming*, 3. *Kelly* 484 ; *Jackson vs. Culpepper*, *do.* 569 ; *Spalding vs. Grigg* 4. *Ga.* 84 ; *Robinson vs. Schley*, 6. *Ga.* 526 ; *McGlawn vs. McGlawn*, 17. *Ga.* 234 ; and are not, as I think, opposed by *Dudley vs. Mallory*, 4. *Ga.* 52 ; *Crary vs. Rollins*, 8. *Ga.* 450 ; *Simms vs. Arnold*, 10. *Ga.* 506 ; *Wellborn vs. Weaver*, 17. *Ga.* 275 ; or by any other case.

It is true, that in this instrument there is to be found this language ; " have given," &c., and " do give," &c., " unto my children above named, all the property hereafter named, to be equally divided between them at my death."

But the words " at my death," refer to the time when the *division* of the property among the children was to take place ; not to the time when the *title* to the property was to vest in the children. Such would have been the case, even if the words had been, " to be paid," or delivered, at my death, in stead of being merely, " to be divided" at my death. " When a legacy is given to a person *to be paid*, or *payable* at, or when he shall attain the age of twenty-one, or at a future *definite* period, the *interest* in the legacy shall be considered to be vested in the legatee immediately upon the testator's death, as *debitum in presenti solvendum in futuro*, the *time* being annexed to the *payment*, and not the *gift* of the legacy." 1. *Rop. Leg.* 376.

Suppose the words had been, not " at *my* death," but at the death of *A. B.* Can there be a doubt, that the gift would

not have vested in the children before the death of A. B.? and between "at *my* death," and "at the death of *A. B.*," what is the difference? "If at the death of *A. B.*," would not prevent the gift from vesting before the death of A. B., why should "at my death," prevent the gift from vesting before my death.

This instrument is such, that it will be good, whether considered as a will, or as a deed. It, unquestionably, has the *form* of a deed. To make it a will, therefore, we should have to do violence at least to its form. But what reason is there to justify us in doing violence, even to so unimportant a thing as its form? It will be equally good if we respect its form, and say it is a deed. In short, there is no room in this case, for the maxim, that words may be strained, if straining them is necessary, *ut res magis valeat quam pereat.*

There ought to be a new trial.

Judgment reversed.